STATE OF CONNECTICUT *v.* ROBERT LEPRI
(AC 18769)

Lavery, Landau and Hennessy, Js.

Argued October 25, 1999—officially released January 18, 2000

*Gary A. Mastronardi*, for the appellant (defendant).

*Ellen A. Jawitz*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Terence Mariani*, assistant state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. The defendant, Robert Lepri, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2)[1] and risk of injury to a child in violation of General Statutes § 53-21 (2).[2] On appeal, the defendant claims that (1) the trial court improperly admitted evidence of his uncharged misconduct to show a common scheme or plan, (2) the court improperly refused to instruct the jury that consensual tape recording of private conversations is a lawful inves-

---

[1] General Statutes § 53a-70 provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes § 53-21 provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

tigatory technique and (3) the prosecutor's comments during rebuttal argument deprived the defendant of a fair trial. We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. On March 22, 1997, J, the victim, was with his friend D, at D's house. Both were twelve years old at the time. D and J decided to go roller-skating, and D called the defendant, whom he had known for approximately three years, to ask if he would pick them up and transport them to the skating rink. When they arrived at the rink, D got out of the car and the defendant asked J to go with him to the defendant's house. J agreed. Sometime after arriving at his home, the defendant played a pornographic video on a big screen television depicting nude men and women having sex. The defendant told J to pull down his pants and, when J complied, performed fellatio on him. Following that act, J put his pants back on and went with the defendant to his car and was handed $10 and told not to tell anyone. The defendant then took J to the skating rink.

A few days later, J told his mother about the incident, and she told J's probation officer. During the ensuing police investigation in April, 1997, D told Detective Karin Cerutti of the Waterbury police department that about one week before the interview, the defendant had picked him up, brought him to the defendant's house, played a pornographic videotape and attempted to assault him sexually. D stated that the defendant had not assaulted him in the past because he brought a new friend to the house whenever he was there. D also said that whenever he was with a young Puerto Rican friend about J's age, the defendant would ask him whether that person would let him "suck his thing." In addition, the defendant would give D money whenever he needed it.

The defendant was arrested by the Waterbury police and charged in a substitute information with two counts

of sexual assault in the first degree and two counts of risk of injury to a child. All of the charges were based on the March 22, 1997 incident involving the defendant and J. A jury found the defendant guilty of one count of sexual assault in the first degree and one count of risk of injury to a child. This appeal followed. Other facts will be discussed where relevant to issues in this case.

I

In his first claim, the defendant asserts that the trial court improperly exercised its discretion and violated his due process rights in permitting the state to offer evidence of his uncharged misconduct to show a common plan or scheme. We disagree.

During the state's case-in-chief, D testified to the following:[3] At some point prior to April 15, 1997, D was at the defendant's house alone with the defendant and sitting on a couch in his living room. There was a big screen television in the room, and the defendant played a video of men and women having sex. When the defendant attempted to touch D's private parts, D pushed him away and told the defendant to take him home. The defendant complied.

During cross-examination of D, defense counsel elicited that D was picked up by the defendant and taken to the house where the defendant asked him whether he let people touch him for money and whether D would touch the defendant's private parts for money. The defendant also attempted to place his hands in D's pants.[4]

---

[3] This evidence was first proffered outside the jury's presence. After objection, the court ruled that the testimony was admissible stating: "The court is of the opinion that it is relevant to the material issue in the case other than the defendant's character, namely a common plan or scheme or design, and that its probative value outweighs its potential for prejudice. Therefore, the court rules that the uncharged misconduct evidence is admissible."

[4] The state later offered D's written statement to the police, which was admitted without objection. The statement provided the following relevant

Immediately following the state's direct examination of D regarding the attempted assault, the court instructed the jurors that they were "expressly prohibited from using this evidence as evidence of bad character of the defendant or as evidence of a tendency to commit criminal acts," but that they might, if they found the evidence credible, use it for the "sole and limited purpose of assisting [them] in determining common scheme and design and for no other purpose." This instruction was followed by a curative instruction during the final charge in greater detail.[5]

"As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . On the other hand, evidence of crimes so connected with the principal crime by circumstance, motive, design, or innate peculiarity, that the commis-

details: "[The defendant] picked me up at my house last week after it was dark outside and brought me to his house in his car . . . . He went into this little brown cabinet next to the television and showed me two pornographic movies and asked me which one I wanted to watch. He decided which movie we were going to watch and he put it into the VCR. Then he asked me if I let people touch me for money, touch my private parts. I said 'no.' Then he asked me if I would touch his private parts and I said 'no.' He started talking real nasty to me and then tried to grab my private parts with his hand while we were on the couch. I pushed him and told him to get away from me."

[5] The trial court stated: "The evidence offered by the state in this regard through [D], of prior acts of misconduct by the defendant, is not being admitted to prove the bad character of [the defendant] or his tendency to commit criminal acts. Such evidence is being admitted solely to show or establish a common scheme in the commission of criminal acts.

"You may not consider such evidence as establishing a predisposition on the part of the defendant to commit any of the crimes charged or to demonstrate a criminal propensity. . . .

"[I]f you do not believe such evidence or even if you do, if you find that it does not logically and rationally and conclusively support the issues for which it is being offered by the state, namely a common scheme, then you may not consider that testimony for any other purpose."

sion of the collateral crime tends directly to prove the commission of the principal crime, is admissible. . . . We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. . . . Second, the probative value of the evidence must outweigh its prejudicial effect." (Citations omitted; internal quotation marks omitted.) *State* v. *Kulmac*, 230 Conn. 43, 60–61, 644 A.2d 887 (1994).

"The admission of evidence of prior uncharged misconduct is within the discretion of the trial court. The trial court's discretionary determination that the probative value of such evidence outweighs its prejudicial effect will be disturbed on appeal only for a manifest abuse of discretion. . . . Every reasonable presumption will be given in favor of the trial court's ruling. . . . We are more liberal in admitting evidence of other criminal acts to show a common scheme or pattern in sex related crimes than other crimes." (Citations omitted; internal quotation marks omitted.) *State* v. *Walsh*, 52 Conn. App. 708, 716, 728 A.2d 15, cert. denied, 249 Conn. 911, 733 A.2d 233 (1999); see *State* v. *Hauck*, 172 Conn. 140, 145, 374 A.2d 150 (1976).

In a threshold claim, the defendant asserts that the acts of uncharged misconduct occurred subsequent in time to the act for which the defendant was on trial and, thus, it was an inappropriate exercise of the court's discretion to admit this evidence.[6] *Kulmac* and its progeny frequently refer to *prior* uncharged misconduct. In Connecticut, as in almost all other jurisdictions, "[e]vidence of crimes subsequent to the crime charged are also admissible for the same purposes as those commit-

---

[6] Although the defendant's conviction was based on acts committed on March 22, 1997, the testimony of D at trial related to an incident that occurred roughly two weeks later, sometime prior to April 15, 1997.

ted prior to the charge." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 8.3.2, p. 233.

Our Supreme Court, while recognizing that evidence of guilt of other crimes is inadmissible to prove that the defendant is guilty of the crime charged, has upheld the admission of subsequent misconduct by a defendant as relevant to the issue of identity. *State* v. *Smith*, 198 Conn. 147, 157, 502 A.2d 874 (1985). In *Smith*, the defendant was involved in an altercation at a bar where he displayed a weapon similar to the one described by the victim of an earlier sexual assault with which the defendant was charged. Id., 156–58. In *State* v. *Payne*, 219 Conn. 93, 98–106, 591 A.2d 1246 (1991), the court considered whether the trial court's admission of evidence of the defendant's subsequent criminal activity to prove identity was appropriate. To uphold the admissibility of the evidence, the court had to determine that it was relevant and that its probative value outweighed its prejudicial effect. Id., 98. Without making any distinction between prior uncharged misconduct and subsequent uncharged misconduct, the court held that the evidence was not relevant and, therefore, should not have been admitted. Id., 102. The important factor, therefore, in admitting evidence of uncharged misconduct is its relevancy and prejudicial effect. Thus, the defendant's claim that the evidence admitted in this case related to a subsequent act of uncharged misconduct and was therefore improperly admitted is of no merit.

The defendant claims that the trial court abused its discretion by improperly admitting evidence under the uncharged misconduct doctrine. Prior to trial, the state filed written notice that it intended to adduce evidence of uncharged misconduct. At trial, the state claimed that the evidence of uncharged misconduct should be admitted to show a common scheme or plan. "Evidence of prior sex offenses committed with persons other

than the prosecuting witness is admissible to show a common design or plan where the prior offenses (1) are not too remote in time; (2) are similar to the offense charged; and (3) are committed upon persons similar to the prosecuting witness." *State* v. *Esposito,* 192 Conn. 166, 169–70, 471 A.2d 949 (1984).

In this case, the defendant on two separate occasions, within weeks of one another, drove a victim to his house, had the victim sit on the couch and played a pornographic videotape on a big screen television. In each incident, the defendant appeared more interested in touching the victims than being touched. As to D, the defendant attempted to put his hands down D's pants; in J's case, the defendant pulled down J's pants and then performed fellatio on him. Both cases involved money.[7] The victims were of a similar age and both were Puerto Rican.[8]

The trial court concluded, and the state argues on appeal, that the evidence of the prior uncharged misconduct was properly admitted to show a common scheme or plan. We agree. The first part of the two-pronged test determining admissibility of uncharged misconduct evidence requires a showing that the evidence is material and relevant to show a common scheme. *State* v. *Kulmac,* supra, 230 Conn. 61. This has been demon-

---

[7] The defendant asked whether D allowed people to touch him for money and then asked whether D would touch him for money. Similarly, the defendant gave J $10 after performing a sexual act on the child.

[8] The defendant also argues that the similarities between the occurrences were of such a common experience that they apply to pedophiles generally. We do not agree. The inference does not arise "from the mere fact that the charged and uncharged offenses share certain marks of similarity . . . ." *State* v. *Esposito,* supra, 192 Conn. 172. However, "the inference need not depend upon one or more unique or nearly unique features common to the charged and uncharged offenses, for features of substantial but lesser distinctiveness, although insufficient to raise the inference if considered separately, may yield a distinctive combination if considered together." (Internal quotation marks omitted.) Id.; *State* v. *Madore,* 45 Conn. App. 512, 520, 696 A.2d 1293 (1997).

strated by the similarities of age, ethnicity and the characteristics of the assaults. The defendant's actions in driving the victims to his home, seating them on the couch, playing a pornographic video on a big screen television, the defendant's desire to "touch" the victims' penises, and the use of money all form a distinctive pattern to meet the requirements of *Kulmac*.

The defendant further claims that the evidence should have been excluded because its prejudicial effect outweighed its probative value. We do not agree. Because D's testimony was highly probative of the defendant's common scheme of sexual misconduct, the court did not abuse its discretion by finding that the probative value of the evidence outweighed its prejudicial effect. The defendant's theory of defense, essentially, was that J lied about the assault because he was in trouble with his probation officer and needed an excuse for not obeying his condition of probation. Thus, the evidence of the defendant's uncharged sexual misconduct with D was probative of whether J had fabricated his story or whether he was telling the truth and had been sexually assaulted by the defendant as part of a common scheme or plan.

In contrast, the prejudicial effect of the evidence was minimal because the court, in its limiting jury instructions, warned the jury to use D's testimony only as evidence of a course of criminal conduct by the defendant and not as evidence of the defendant's criminal disposition. Accordingly, the court did not abuse its discretion in admitting the evidence of uncharged misconduct.[9]

---

[9] The defendant also argues that the admission of his uncharged sexual misconduct with D violated his federal due process rights. He seeks review of his unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). It is axiomatic that to prevail on a claim that an evidentiary error deprived the defendant of his federal due process rights, this court must first find that there was in fact an evidentiary error. Because we have held that the trial court appropriately admitted the evidence of the

## II

The defendant next claims that the court improperly refused to instruct the jury that the consensual tape recording of private conversations is a lawful investigatory technique in Connecticut.[10] After hearing argument from counsel, the court declined to give the requested charge, ruling: "There is no wiretapping evidence in this case. With regard to that request to charge . . . there is no evidence in this case obtained by any wiretapping. Thus, such evidence is not a legal issue in the case for jury consideration and no jury instruction is necessary. . . . [I]n this particular case, Detective Cerutti, on cross-examination, testified that no wiretaps were conducted as an investigatory tool and expressed an opinion that it would be illegal to conduct them. [The court is] uncertain of the basis for that opinion, but [we] point out that both [J] and [D] are minors and the police certainly in this state would not be able to use these minors in a wiretap procedure without parental permission. For all these reasons, I decline to give the charge as requested."

The road upon which we must tread is clear and well laid out. "A request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given." (Internal quotation marks omitted.) *State* v. *Pinnock*, 220 Conn. 765, 789, 601 A.2d 521 (1992). The trial court must present "instructions to the jury in a manner calculated to give them a clear understanding of the issues presented for their consid-

defendant's uncharged sexual misconduct, the defendant's claim that such evidence violated his federal due process rights must also fail.

[10] At the close of evidence, the defendant submitted the following request to charge. "I instruct you that, when a recording of a telephonic conversation is made by police without the knowledge of the defendant, but with the consent and agreement of the other party to the conversation, the use of this procedure to gather evidence is perfectly lawful and, if such a recording existed, the state would have been entitled to use that tape recording as evidence in this case."

eration, under the offenses charged and upon the evidence, and . . . its instructions [must be] suited to their guidance in the determination of those issues." (Internal quotation marks omitted.) Id., 789–90. " 'The ultimate test of a court's instructions is whether taken as a whole, they fairly and adequately present the case to a jury in such a way that injustice is not done to either party under the established rules of law.' " *State v. Villafane*, 45 Conn. App. 110, 115, 694 A.2d 802, cert. denied, 241 Conn. 926, 697 A.2d 362 (1997).

The facts relevant to our analysis of this issue are not disputed. During cross-examination, Detective Cerutti testified that D had told her that he and the defendant would speak on the telephone from time to time. Cerutti testified that she had decided not to ask D to record one of the telephone conversations, believing that D would be uncooperative. She also testified that she had never used a telephone tap where a young witness was involved. After further questioning by defense counsel as to her reasons for not requesting that J come to the police department to make a call to the defendant, she replied, "I did think of it, but it's really not legal to do that," reasoning, "because then you are going to ask [J] to act on the part of the police department."

The defendant maintains that Cerutti's testimony about the legality of consensual monitoring provided sufficient basis to support the requested charge. Specifically, he posits that Cerutti testified that the consensual tape recording of a conversation between D or J and the defendant would have been illegal and, therefore, the requested instruction was warranted. The state asserts that the defendant mischaracterizes Cerutti's testimony. The defense counsel asked her why she did not have J make the telephone connection from the police station, and Cerutti responded that it would be illegal. Thus, she offered an opinion on the legality of

having J make the call from the police station and not on the legality of consensual tape recording in general.

There is no question that the defendant's request to charge correctly stated that the tape recording of a telephone conversation with the consent of one of the parties to a conversation is a lawful investigatory technique. See *State* v. *Tomasko*, 238 Conn. 253, 272, 681 A.2d 922 (1996). A trial court, however, need not give a requested charge solely because it is a correct statement of the law; it must also be relevant and not be confusing to the jury. Here, there was no wiretap evidence admitted at trial. We fail to ascertain any relevance to Cerutti's testimony that she believed it would be illegal for her to ask J to place a call to the defendant from the police station. There was no reason to believe that the defendant would either speak to J or make an incriminating statement. We also note that the proposed instruction, not relevant to the issue at trial, may well have confused the jury. See *State* v. *Thomas*, 50 Conn. App. 369, 382, 717 A.2d 828, cert. granted on other grounds, 247 Conn. 935, 722 A.2d 1217 (1998). The court appropriately declined to give the requested charge.

## III

The defendant's final claim is that, during the state's rebuttal argument, the prosecutor "resorted to a vicious personal attack" on him and his lawyers, improperly drew comparisons between defense counsel and J, injected references to his personal life and individual efforts in the case and vouched for the credibility of J. The defendant seeks review of this unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[11]

---

[11] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged

As stated earlier, the defendant's theory of defense was that J was never assaulted and that he fabricated the story because he was in trouble with his probation officer and needed an excuse for his failure to comply with the terms of his probation. Defense counsel unfolded this theory during closing argument by attempting to portray J as a liar and a thief.[12] On rebuttal, the prosecutor stated: "I want to thank [defense counsel] because he did something during his argument—he reminded me why I became a lawyer. You can get somebody born in Fairfield, who practices law in Bridgeport, you can get the former chief of adjudications of the motor vehicle department, you can go to Kentucky and get a twenty year [judge advocate general] attorney, but in this courtroom the word of a twelve year old boy is enough to push them out of the room.

"The first case I ever tried was in Kendrick Avenue and it was a horrible courthouse. There were linoleum floors, the carpet was all torn up, but when I walked in I realized why I wanted to be a trial attorney and why I wanted to be a prosecutor—because a twelve year old boy can come in here and out in the street

---

constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." *State* v. *Golding*, supra, 213 Conn. 239–40.

[12] Defense counsel stated: "We have this kid, [J], who claims that [the defendant] sexually assaulted him on March 22, 1997 . . . . Four days it takes him before he finally tells somebody . . . . Who does he finally tell? He tells his mother and then who do they go to? Do they go to the cops? No. He goes to his probation officer . . . . At exactly the same time, coincidentally, the probation officer is in the process of violating his probation and putting him into reform school. . . . He's got all the motive in the world to lie, ladies and gentleman. He needs a reason to tell his probation officer why he's been screwing up the way he's been screwing up. . . . [The] [p]rosecutor says these kids were reluctant. Sure they were reluctant. They were lying. Liars are reluctant."

people might not believe him—someone who spent fourteen years at the motor vehicle department might think that when he is out there he can take advantage of him because there is nobody looking out for him, but when he comes here that's where I—and that's where the state is. And we are not going to let this little boy be abused by that man and hire three attorneys." At that point the trial court stated, "[m]ove the argument away from the personalization of counsel. Move it away."

The defendant never objected to the comments, never requested that they be stricken from the record and never requested a curative instruction. On appeal, he claims, for the first time, that the prosecutor was making an "obvious reference" to the defendant's three attorneys who allegedly had introduced themselves in this manner during voir dire. We say "allegedly" because the defendant has failed to file a transcript of the jury voir dire and, therefore, it is impossible to know from the record whether the prosecutor was, in fact, referring to the three defense attorneys and, if so, whether all of the jurors would have understood this reference. In addition, the defendant also claims that the prosecutor's reference to "someone who spent fourteen years at the motor vehicle department" was a direct reference to the defendant, who was introduced just prior to voir dire as a former inspector for the department of motor vehicles. Again, there is no record and, therefore, this claim must fail under the first prong of *Golding*.

As to the defendant's other claims of prosecutorial misconduct during closing argument, "where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial," we have consistently held that the second prong of *Golding* has not been met. (Internal quotation

marks omitted.) *State* v. *Villanueva*, 44 Conn. App. 457, 461, 689 A.2d 1141, cert. denied, 240 Conn. 930, 693 A.2d 302 (1997). The claimed misconduct was present in only one portion of the prosecutor's rebuttal argument and the defendant has failed to show[13] the presence of a pattern of misconduct that was so pervasive throughout the trial that it deprived him of his right to a fair trial.[14]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] The burden is on the defendant to show that the prosecutor's remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted. *State* v. *Robinson*, 227 Conn. 711, 746, 631 A.2d 288 (1993).

[14] To the extent that the remarks are reviewable, first, they were invited by defense counsel's repeated remarks as to J's character. See *State* v. *Delosantos*, 13 Conn. App. 386, 392, 536 A.2d 609 (1988). Second, the comments were not so severe that they deprived the defendant of a fair trial. *State* v. *Sherman*, 38 Conn. App. 371, 398–99, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995); *State* v. *Boone*, 15 Conn. App. 34, 53–54, 544 A.2d 217, cert. denied, 209 Conn. 811, 550 A.2d 1084 (1988).

If the prosecutor's remarks were improper, they were cured by the court's admonition to the prosecutor in the jury's presence and the instructions delivered by the court during its charge to the jury. The court stated: "You should keep in mind that arguments and statements by attorneys in final argument or during the course of the case are not evidence. You should not consider as evidence their recollection of the evidence, nor their personal belief as to any facts or as to the credibility of any witness, nor any facts which any attorney may have presented to you in argument from that attorney's knowledge which was not presented to you as evidence during the course of the trial. The attorneys are not witnesses. They are advocates. And what they advocate is not evidence."

The defendant's plain error argument is of no merit inasmuch as the trial court did take curative action immediately and in its final charge.