[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this action, by his second amended petition filed January 3, 2000, petitioner seeks a writ of habeas corpus, immediate release from confinement and other relief. For reasons hereinafter stated, the petition is dismissed.
The evidence indicates that on March 26, 1996, in the judicial district of Windham, petitioner entered a plea of guilty before the Honorable Samuel J. Sferrazza under the doctrine of NorthCarolina v. Alford, 400 U.S. 25, 37 (1970), to the crime of sexual assault in the first degree in violation of General Statutes § 53a-70 (a)(1). This offense is a class B felony with a maximum sentence of 20 years imprisonment. Under the circumstances of this case, the statutory minimum mandatory sentence of one year was applicable. Petitioner entered his plea with an agreement for a definite sentence of 15 years, execution suspended after ten years followed by five years probation. Other charges were not prosecuted. After the acceptance of the plea, the matter was continued to May 3, 1996, for sentencing. On that date, the agreed sentence was imposed and petitioner remains confined to the custody of the Commissioner of Corrections pursuant to that sentence.
In his petition, the petitioner seeks a writ of habeas corpus claiming ineffective assistance of counsel on the part of Attorney Ramon Canning, the attorney who represented him at the time of plea and prior to that date, and Attorney Lawrence Bates, who represented him at the time of sentencing.
"The standard to be applied by habeas courts in determining whether an attorney effectively represented a criminal defendant is set forth in Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice . . . thus, he must establish not only that his counsel's performance was deficient, but as a result thereof, he suffered actual prejudice, namely, that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . In this context, a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have CT Page 1336 been different, does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome of the case . . . Rather, it merely requires the petitioner to establish a probability sufficient to undermine confidence in the outcome. . . . Bunkley v. Commissioner ofCorrection, 222 Conn. 444, 445-46, 610 A.2d 592 (1992)." Mercev. Commissioner of Correction, 51 Conn. App. 638, 640-641 (1999).
"In order to succeed in a claim of ineffective assistance of counsel, the petitioner must prove: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competence contributed so significantly to his conviction as to have deprived him of a fair trial." Id.
 I.
The first count of the second amended petition sets forth a claim of ineffective assistance of counsel against Attorney Canning. The claim of ineffective assistance is set forth in considerable detail but falls into two broad categories. The first category is that Attorney Canning failed to conduct an adequate pretrial investigation of facts in support of petitioner's claim that he was innocent of the charge and that the sexual intercourse was consensual. The second category involves claims that Attorney Canning failed to investigate the circumstances surrounding petitioner's confession which he claimed was not voluntary because at the time it was given he was extremely intoxicated.
Attorney Canning, public defender for the judicial district of Windham, was appointed in March, 1995, to represent petitioner on the charge for which he was eventually sentenced.
The evidence shows that the petitioner had been arrested on a warrant dated March 15, 1995, for a sexual assault which was alleged to have occurred on July 12, 1994. The first complaint by the victim to the police was made on August 12, 1994. In her complaint, the victim stated that she had been raped at the Wauregan Reservoir by a white male who was later identified as the petitioner. On August 21, 1994, petitioner was questioned by the police concerning the alleged attack. He voluntarily gave a statement to the police which was generally similar to the CT Page 1337 victim's statement except that he claimed that the sexual intercourse was consensual.
The state's file contained a statement by Dianna Moreau, a friend of the victim. This statement, which was given to the police on September 6, 1994, indicated that in the middle of July of that year, the victim told her that she had been raped on July 12 by a man named Rick at the Wauregan Reservoir. Ms. Moreau stated that the victim showed her some "fresh, dark purple bruises on her outer thighs. The bruises looked like finger marks." The victim stated that the bruises were inflicted by Rick during the sexual assault. Ms. Moreau also said that Rick had told the victim he would come after her if she said anything about the attack.
Petitioner was arrested pursuant to a warrant and again questioned by the police again on March 20, 1995. At that time, after being advised of his constitutional rights, he admitted that he had lied in his previous statement. In this second statement, he admitted that he forced the victim to engage in sexual intercourse with him.
Petitioner's case was assigned for trial on March 26, 1996. On that date, a long form information was presented charging the petitioner with sexual assault in the first degree in violation of General Statutes § 53a-70 (a)(1), kidnapping in the first degree in violation of § 53a-92 (a)(2)(A) and unlawful restraint in the first degree in violation of § 53a-95. There was also a Part II of the information charging the petitioner with being a persistent dangerous felony offender in violation of § 53a-40 (a). If the petitioner was convicted of some of the charges and the Part II, his exposure would be 40 years. On prior occasions, Attorney Canning had recommended that petitioner enter a plea of guilty in return for the agreed sentence of 15 years with the execution suspended after ten and five years probation. On that date, while the jury was being processed, Attorney Canning and his investigator visited with petitioner. Mr. Canning gave the petitioner a letter indicating his concern. Petitioner and Attorney Canning had discussed resolving the case short of trial on a number of prior occasions. Attorney Canning's file, presented in evidence by the petitioner, has an indication "9/29. Spoke to Richard. He wants lower offer. Knows he must do time. Question of how much."
On March 26, 1996, Attorney Canning again reviewed with the CT Page 1338 petitioner the problems facing the defense of his case. Mr. Canning informed petitioner that he had observed the victim and her husband in the courthouse and it was assumed that she was prepared to testify in the case.[1] It also could have been assumed that Ms. Moreau would have been able to testify as to her observations of petitioner's bruises and as a constancy of accusation witness in accordance with State v. Ouellette,90 Conn. 84 (1983).[2] Her testimony concerning the victim's statement that petitioner had threatened her if she reported the incident might be used to explain the victim's delay in going to the police.
It was also logical to assume that petitioner's confession would be used against him by the prosecution. Petitioner could certainly testify as to his version of events and that the sexual intercourse was voluntary and his confession was involuntary. However, the case would hinge on the issue of credibility and petitioner's credibility could be impeached by his prior felony record. State v. Marquez, 160 Conn. 47, 52
(1970). Also, Attorney Canning pointed out in his letter because of petitioner's prior criminal record, conviction would most likely result in a harsh sentence.[3]
After reviewing these matters with his attorney, the petitioner indicated that he wanted to go to trial in the anticipation that on the witness stand the alleged victim would break down and admit that the intercourse was consensual. After further discussion, the petitioner reluctantly agreed to enter a guilty plea as previously indicated. The plea was entered under the doctrine of North Carolina v. Alford, 400 U.S. 25, 37 (1970). In entering a guilty plea under the Alford doctrine, a defendant does not admit guilt, but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless. State v. James, 197 Conn. 358, 359
n. 1 (1985).
This plea was entered on the same date in open court. Before the plea was accepted, a thorough canvass in accordance with Practice Book § 39-19 (§ 711 at the time of plea) was made by Judge Sferrazza. During the canvass, petitioner indicated that he had discussed the matter with his attorney and that he was satisfied with the attorney's assistance and that if the plea were accepted by the judge, petitioner would not be allowed to withdraw it at a later date. Petitioner also indicated that his plea was voluntary and that he had not been threatened or forced CT Page 1339 into pleading guilty.
On April 4, 1996, while petitioner was confined awaiting sentencing, he attempted to castrate himself, as he claimed, because of the unfair judicial system. He subsequently wrote a three-page letter to the CCLU Foundation with copies to Governor Rowland, the court and other parties. In this letter, petitioner claimed that he was tricked into signing the confession, Attorney Canning had failed to represent him properly and forced him into the plea. Petitioner professed his innocence and requested an investigation as well as an opportunity to go to trial. Petitioner also filed a grievance against Attorney Canning with the Statewide Grievance Committee.
Because of the grievance and the letter, Attorney Lawrence Bates, Jr. was appointed to represent petitioner at the sentencing scheduled for May 3, 1996, in lieu of Attorney Canning.
At trial, plaintiff called Attorney Arthur Meisler as an expert witness. Attorney Meisler, a respected lawyer with considerable experience representing criminal defendants, had previously testified six or eight times in similar cases. It was Attorney Meisler's testimony that Attorney Canning's investigation and preparation of plaintiff's case was so inadequate that a recommendation of a plea of guilty and acceptance of the plea bargain could not properly have been made.
The issue then is whether Attorney Canning, laboring under sisyphean case loads exercised what the court, with the benefit of hindsight, may characterize as due diligence. Clarke v.Commissioner of Correction, 249 Conn. 350, 360 (1999). More specifically, the question is whether petitioner has proven that Attorney Canning's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law and whether such lack of competence contributed so significantly to petitioner's conviction as to have deprived him of a fair trial. Mercer v.Commissioner of Correction, supra, 51 Conn. App. 640-41.
Petitioner has alleged a number of specific claims of ineffective assistance of counsel against Attorney Canning. The principal claims will be addressed separately.
 a. CT Page 1340
The complaint alleges that Attorney Canning failed to conduct an adequate pretrial investigation of facts in support of petitioner's claim that he was innocent of the charge and that the sexual intercourse was consensual. It was petitioner's claim that the charge of rape by the alleged victim was pretextual to explain a venereal disease infection. The evidence confirms that on July 12, 1994, the alleged victim was estranged from her husband. The affidavit accompanying the arrest warrant application states that the alleged victim separated from her husband sometime in the beginning of July, 1994. Shortly after sexual intercourse with petitioner, the victim reunited with her husband who became infected with the venereal disease, chlamydia. On July 26, 1994, the victim who tested positive for that disease informed her husband that he had contracted the disease from her. She also informed him that she had been raped on the 12th by petitioner. Petitioner claims that the victim concocted the rape charge to explain the venereal disease infection to her husband.
At the request of the police, petitioner was tested for this disease. On October 5, 1994, petitioner supplied the state police with a laboratory report indicating that he had tested negative for chlamydia.
There is no doubt but that the chlamydia scenario, together with the 30-day delay in reporting the assault to the police would have been helpful to the defense and could have been used in cross examination of the victim. This was known to Attorney Canning and was considered in his assessment of the petitioner's case. It was also known to the state's attorney. Attorney Canning testified that the state realized that it did not have an open and shut case against petitioner. These factors must have been involved in plea negotiations and in the offer which the state ultimately made.
It is alleged by the petitioner that Attorney Canning was negligent in investigating this defense by failing to obtain the medical reports of the victim and her husband relevant to the venereal disease and the state reporting requirements. It was also claimed that Canning was deficient in failing to talk to a medical expert regarding chlamydia and its incubation period.
Petitioner, who has the burden of proving the allegations of the complaint, has not introduced the medical records to demonstrate whether or not such records would have been important CT Page 1341 to the case. Also, petitioner has not established whether the medical records would have been available. General Statutes §§19a-25 and 19a-215 would seem to indicate that such might be confidential.
Although knowing more about chlamydia and its incubation period might have been of interest to the defense, there is nothing to indicate that it would be of crucial importance.
At the request of the state police on December 6, 1994, petitioner submitted to a polygraph examination at the state police polygraph unit in Meriden. It was the opinion of the polygraph examiners that petitioner was deceptive in his answers to certain questions. This test could not be used against petitioner in any prosecution. State v. Porter,241 Conn. 57, 92-132 (1997). It was alleged that Attorney Canning was at fault for not obtaining a videotape of the polygraph test. The videotape would have disclosed any statement against interest made by petitioner at the examination and could have been used by the state in cross examination of petitioner in the event that his trial testimony differed from statements made at the examination. Possession of the videotape by defense counsel would have been helpful in the event that any of the above possibilities occurred. It cannot be found, however, that in view of the evidence which exists in this case failure to obtain the videotape constituted ineffective assistance of counsel or that petitioner suffered any actual prejudice as a result of the failure to obtain the tape.
While possession of the videotape might have made the defense feel more secure at trial, there is nothing to indicate that the tape would be significant in evaluating the case or deciding whether to recommend a plea agreement or go to trial.
The complaint also alleges that Attorney Canning was ineffective "[b]y failing to get police reports of petitioner's prior conviction to ascertain whether any common scheme existed in order to assess the likelihood of prevailing on a Motion in Limine." "Because of its prejudicial impact, evidence of prior acts of misconduct is inadmissible merely to show a defendant's bad character or tendency to commit criminal acts. On the other hand, such evidence may be offered in proof of an issue in the case such as intent, identity, malice, motive or a system of criminal activity." State v. Pollitt, 205 Conn. 61, 69 (1987). (Citations omitted.) CT Page 1342
"To be admitted under one of these exceptions, the evidence must satisfy a two pronged test: first, the evidence must be relevant to the material to at least one of the circumstances encompassed by the exceptions; second, the probative value of the evidence must outweigh its prejudicial effect." State v. Payne,219 Conn. 93, 98 (1991). (Citations omitted.) Courts are more liberal in admitting evidence of other criminal acts to show a common scheme or pattern in sex-related crimes than in other crimes. State v. Hauck, 172 Conn. 140, 145 (1976).
Although the admissibility of other crimes or bad acts by petitioner could have been raised by a motion in limine, the state has the obligation of establishing the admissibility of such evidence. This is normally done by the state filing a written notice that it intends to adduce evidence of uncharged misconduct. This would be followed by a review of the evidence outside of the jury's presence. State v. Lepri,56 Conn. App. 403, 406 n. 3, 409 (2000). Under such circumstances, where the state had the burden of describing the uncharged misconduct and demonstrating its admissibility, it cannot be found that Attorney Canning was remiss in failing to file a motion in limine. The evidence also indicates that Attorney Canning who had defended the petitioner in prior matters was, in fact, aware of his criminal record and was concerned about prior bad acts which could have been used by the state at trial.
Attorney Canning was also aware of petitioner's prior felony convictions and was concerned that his credibility could be impeached by such convictions in the event that he elected to testify at trial. State v. Marquez, supra, 160 Conn. 52.
The second amended petition also alleges that Attorney Canning failed to "assess the alleged victim's credibility vis-a-vis, her statements to the police in contradiction of petitioner's allegations of consensual intercourse;". The evidence on this point is all contrary to the allegation. The evidence indicates that Attorney Canning attempted to obtain an interview with the alleged victim but she refused to cooperate. The evidence also indicates that he observed the victim and concluded that she would be a credible witness.
Petitioner also claims that Attorney Canning was deficient in that he based his opinion "solely on the state's file not having tested the state's case." It is difficult to understand what CT Page 1343 petitioner means by this allegation since the only way the state's evidence could be tested would be at trial. It is not remarkable that Attorney Canning may have concentrated on the information in the state's file since the state had the burden of proving the allegations of the information. Since there were no other witnesses to what occurred at the Wauregan Reservoir on July 12th, 1994, except petitioner and the victim, the case would hinge to a large extent on the credibility of those two parties and Ms. Moreau. The attorney attempted to interview the victim and Ms. Moreau, but was unable to do so. He did interview petitioner and obtained his version of what occurred.
 b.
Petitioner was arrested on March 20, 1995. After his arrest, he was again questioned by the police. At that time, he, in effect, confessed to the offense for which he was convicted. By the second amended petition, it is claimed that Attorney Canning was ineffective by failing to investigate the circumstances under which this petition was taken, more specifically, by failing to conduct an adequate pretrial investigation into petitioner's claim that he was extremely intoxicated when he gave the statement to the police. It is claimed that Canning failed to investigate the testimony of witnesses, Marilyn and Ronald Mitchell and Brian Kraznecky, who would have testified that petitioner was extremely intoxicated at the time he gave his statement admitting guilt.
"The use of an involuntary confession in a criminal trial is a denial of due process of law." State v. Correa, 241 Conn. 322,327 (1997). "Whether a confession is voluntary and admissible is a question of fact to be decided by the trial court." State v.Schroff, 206 Conn. 182, 196 (1988). Ronald Mitchell, petitioner's cousin, testified at the habeas hearing that on March 20, 1995, petitioner was living with him. He stated that on that date petitioner returned from work between 8:00 and 9:00 o'clock in the evening and that he had beer in his possession and had been drinking. Mr. Mitchell described petitioner as "feeling pretty good." Brian Kraznecky also testified at the habeas trial. Mr. Kraznecky indicated that on March 20, 1995, he was working with petitioner and that petitioner was intoxicated at the time that he left work.
In his statement given on March 20, 1995, petitioner stated, "I am not under the influence of any alcohol or drugs." It could CT Page 1344 also be assumed that the police officers who interviewed petitioner would testify that petitioner was not under the influence of alcohol at the time the statement was taken.
Petitioner testified that he had been drinking beer and that he was arrested at 11:30 in the evening. The written statement indicates that petitioner started making the statement on March 20, 1995, at 2355 (11:55 p.m.) and ended March 21, 1995, at 0115 (1:15 a.m.). Under such circumstances, the testimony of Mitchell and Kraznecky as to petitioner's sobriety earlier in the evening may have been relevant as to his condition at the time the statement was given. It is undisputed that Attorney Canning did not contact either of these parties or attempt to get statements from them.
Petitioner may have informed Attorney Canning that he had been drinking prior to giving the confession, but this does not appear to have been stressed. Attorney Canning's recollection is that petitioner did not give him the names of the two witnesses and there is nothing in his file to indicate that he was aware of the witnesses. The public defender's file, which was introduced into evidence by petitioner, contains a handwritten letter, or copy of a letter, from Attorney Canning to petitioner. The letter appears to have been written after Attorney Canning talked to petitioner at Corrigan and became aware that petitioner was unhappy with the decision to plead guilty. This letter contains the following language: "You never told me you had been drinking prior to giving the second statement, in fact you told me that you understood everything Trooper Muriel told you, and gave him the statement because it was true, and he told you that if you were truthful he would recommend a low bond." There is also in the file a letter to a judge from petitioner dated September 28, 1995. The letter indicates that petitioner's second statement (the confession) was a lie. In the letter, petitioner states that he had been tricked into giving the confession by an assurance that he would be released from custody on a Promise To Appear if he admitted to the offense. There is nothing in the letter to indicate a claim of intoxication at the time the statement was given. These documents tend to confirm Canning's understanding that petitioner's claim concerning the invalidity of the confession was based upon his allegation that he had been tricked into making the statement by the police and not that he was intoxicated and did not understand what was going on.
Even if Mitchell and Kraznecky were called to testify at a CT Page 1345 suppression hearing, their testimony could only concern petitioner's sobriety in the early hours of the evening on March 20, 1995. The principal testimony as to petitioner's sobriety at 11:55 on March 20, 1995, would be that of petitioner, a convicted felon with an interest in the outcome of the case, and the police officers who took the confession.
In view of all of the factors involved, it cannot be found that Attorney Canning was deficient in failing to investigate further the two witnesses who might be able to testify concerning petitioner's sobriety at the time the confession was given or that petitioner suffered any actual prejudice as a result of this situation.
 c.
From the evidence, it must be concluded that petitioner has failed to establish his claim of ineffective assistance of counsel on the part of Attorney Canning. At the time Attorney Canning strongly advised petitioner to enter a plea of guilty and accept the state's offer; he was aware, and communicated to petitioner, that the victim was ready, willing and able to testify in accordance with the statement which she had previously given to the police that petitioner sexually assaulted her and that she had not consented to sexual intercourse. He was also aware of, and had discussed with petitioner, Ms. Moreau's testimony which would tend to confirm the victim's allegations. Attorney Canning also concluded that it was probable petitioner's confession would be introduced into evidence. This had also been communicated to the petitioner. If these matters were introduced into evidence, petitioner would have to testify giving his version of what occurred at the Wauregan Reservoir and recant his confession. Petitioner's credibility would be impeached by his prior felony record.
With the victim's delay in reporting and the chlamydia situation, the state's case against petitioner was not air tight, however, the likelihood of conviction was great and with the persistent dangerous felony offender charge, the likelihood of petitioner receiving a sentence greatly in excess of that offered under the plea bargain was almost certain, if convicted.
As pointed out by Attorney Meisler, Attorney Canning could have investigated further, but in advising plaintiff to plead guilty in return for the agreed sentence, his performance did not fall CT Page 1346 below the required standard of reasonable competence or the competence displayed by lawyers with ordinary training and skill in the criminal law. He knew he would be facing a skilled litigator in defending petitioner. He had a good understanding of what the relevant evidence would be and what the likely outcome of the trial would be. He also understood what petitioner would risk if the case proceeded to trial. These facts were explained to petitioner who appears to have had the unrealistic feeling that the victim would break down on the stand and admit that she lied in her claim of rape. Petitioner appears to have reluctantly accepted Attorney Canning's recommendation and voluntarily entered a plea of guilty in return for the agreed sentence.
 II.
Petitioner entered a plea of guilty to the single charge of sexual assault in the first degree on March 26, 1996, and the matter was continued for sentencing to May 3, 1996.
As previously noted, while petitioner was awaiting sentencing, he attempted to castrate himself and wrote a three-page letter to various parties including the court. In this letter, petitioner claimed that he was tricked into signing his confession, Attorney Canning had failed to represent him properly and forced him into the plea. Petitioner professed his innocence and requested an investigation as well as an opportunity to go to trial. Petitioner also filed a grievance against Attorney Canning with the Statewide Grievance Committee.
Because of the grievance and the letter, Attorney Lawrence Bates, Jr. was appointed to represent petitioner at the sentencing. The second count of the second amended petition presents a claim of ineffective assistance of counsel on the part of Attorney Bates.
By the date of the scheduled sentencing, the court was in receipt of a copy of petitioner's three-page letter. It was decided by the court to treat the letter as a request to withdraw his plea under the provisions of Connecticut Practice Book § 720 (now § 39-26). Section 720 provided that a criminal defendant could withdraw a guilty plea upon proof of one of the grounds in § 721 (§ 39-27), which provides as follows:
 Sec. 721. Grounds. The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as CT Page 1347 follows:
 (1) The plea was accepted without substantial compliance with § 711;
 (2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed;
 (3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the court had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered;
 (4) The plea resulted from the denial of effective assistance of counsel;
(5) There was no factual basis for the plea; or
 (6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant.
The judge reviewed each of the grounds set forth in § 721 and it was determined that the basic reason petitioner desired to withdraw his plea was his claim that the plea had resulted from a denial of effective assistance of counsel.
In support of the request to withdraw the plea, Attorney Bates put forth petitioner's position that he had been coerced by his attorney into entering the guilty plea under a threat of a certain 40 year sentence if he refused. After listening to a recitation of the evidence which the state could have provided at trial and petitioner's prior criminal record of convictions for sex and sex-related offenses, the court concluded that although Attorney Canning may have used strong language in advising his client to plead guilty, it was not bad advice. It was then determined by the court that Attorney Canning's performance did not fall below any professional standards and that petitioner suffered no prejudice because of the advice given. Sentence was then imposed. The second count alleges that Attorney Bates was ineffectual in his representation of petitioner in the attempt to withdraw his guilty plea in that he failed to request a continuance to investigate petitioner's claim and to review the file and to call Attorney Canning to testify. It is also alleged CT Page 1348 that but for Attorney Bates' acts and omissions, results of the proceedings would have been different.
One of the claims in support of the second count is that Attorney Bates never even reviewed petitioner's file before going into the sentencing hearing. The evidence is somewhat in dispute on this point.
Attorney Bates testified that he did not recall seeing the file at the time. Attorney Canning testified that the file was turned over to Attorney Bates prior to the sentencing hearing. In the transcript of the court proceedings on May 3, 1996, Attorney Bates stated that he received the file on the previous afternoon but that he had not yet reviewed it. The transcript also shows that Attorney Bates discussed the situation with petitioner prior to the hearing and that he was aware of the claims of ineffective assistance of counsel and that petitioner had been forced into entering the guilty plea.
From the standpoint of enlightened hindsight, it is clear that Attorney Bates should have requested a continuance so that he could review the file, obtain a transcript of the March 26, 1996 court proceedings, interview Attorney Canning and more fully prepare for the 720 hearing. In this, it must be concluded that his performance was deficient.
It cannot be concluded, however, that petitioner suffered any actual prejudice as a result of this. Assuming that the continuance was granted, it would have been determined at the subsequent hearing that in accepting petitioner's plea of guilty, there was substantial compliance by the court with Practice Book § 711 and that the plea, although reluctantly made, was voluntary. The following excerpts from the transcript support this conclusion.
"THE COURT: Have you discussed this matter with your attorney?
DEFENDANT: Yes.
THE COURT: Are you satisfied with your attorney's advice to you?
DEFENDANT: Yes.
THE COURT: By pleading guilty there isn't going to be any trial. So you're giving up those trial rights. You understand CT Page 1349 that.
DEFENDANT: Yes.
THE COURT: Taftville. All right. Has anyone threatened or forced you into pleading guilty?
DEFENDANT: No.
THE COURT: You're doing it voluntarily.
DEFENDANT: Yes.
THE COURT: All right. And you also understand that if I accept the recommendation and impose the sentence that was recommended you would not, at a later time, be allowed to change your mind and withdraw your guilty plea. You understand that?
DEFENDANT: (No audible response.)
THE COURT: You have to answer out loud.
DEFENDANT: Yes."
After extensive testimony on the petition for a writ of habeas corpus, it has been determined that Attorney Canning was not ineffective in his representation of petitioner.
It is concluded then that petitioner has failed to prove that he suffered any actual prejudice as a result of Attorney Bates' performance or that the proceeding would have been different.
 III.
Accordingly, petitioner having failed to prove the allegations of Counts 1 and 2 of the petition, the petition is dismissed.
Joseph J. Purtill Judge Trial Referee