## STATE OF CONNECTICUT v. KEITH AGGEN
### (AC 22653)

Lavery, C. J., and Schaller and Bishop, Js.

Argued March 28—officially released September 2, 2003

*Avery S. Chapman*, special public defender, for the appellant (defendant).

*Theresa Anne Ferryman*, assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Keith Aggen, appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2),[1] three counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1)[2] and four counts of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2).[3] On appeal, the defendant claims that the court improperly (1) denied his motion for a mistrial after his trial was severed from that of his codefendant, (2) admitted evidence of his uncharged misconduct and (3) refused to allow him to present evidence of the prior sexual assaults committed by another individual on the victims.[4] We affirm the judgment of the trial court.

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

[3] General Statutes (Rev. to 1999) § 53-21 provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

[4] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victims or others through whom the victims' identity may be ascertained. See General Statutes § 54-86e.

The jury reasonably could have found the following facts. From December, 1999, through the summer of 2000, the three male victims, who were between the ages of eleven and fifteen, stayed at the defendant's apartment on the weekends to go fishing. The victims lived with their mother and stepfather during the remainder of the week. Two of the three victims had learning disabilities. The defendant had become friends with the victims' mother and agreed to watch the victims. During the weekend visits, the defendant fondled and performed oral sex on the three victims. The defendant also attempted to have anal sex with one of the victims. In addition, the defendant played strip poker and watched pornographic movies with the victims. The victims' mother learned of the defendant's actions, the police were contacted and the defendant was arrested. Additional facts will be set forth as necessary.

I

The defendant's first claim is that the court improperly denied his motion for a mistrial after his trial was severed from that of his codefendant. The defendant argues that the court's denial of the motion was improper, as the jury was prejudiced against him because it knew of the codefendant's existence.[5] We disagree.

Additional facts are necessary for the resolution of the defendant's claim. At the time of the assaults, the defendant was living with Marty Marszalkowski. Marszalkowski was charged by the state with subjecting a child under the age of sixteen to sexual contact in violation of § 53-21 (2). The state filed a motion to join

[5] The defendant's brief states that claim as whether a joint trial initially was ordered properly, but at oral argument counsel explained that the essence of the claim is that the motion for a mistrial was denied improperly. The state anticipated that this was a mistrial issue and briefed it as such. Therefore, we will address the claim as whether the defendant's motion for a mistrial was denied improperly.

Marszalkowski's trial with the defendant's trial. The defendant opposed the joinder and argued that a joint trial would be prejudicial because the jury would receive evidence of Marszalkowski's statements to the police in which Marszalkowski attempted to explain what happened at their apartment. The court determined that the statements would not be prejudicial to the defendant and that the defendant's and Marszalkowski's defenses were compatible. The court granted the state's motion for joinder.

The defendant made a motion in limine to preclude any evidence regarding his prior uncharged misconduct involving F, a fifteen year old boy.[6] After the selection of five jurors, the court heard the defendant's motion, and the state proffered evidence of prior uncharged sexual assaults on F. Although the state and both defendants originally anticipated that the uncharged misconduct evidence would implicate both defendants equally, the evidence actually implicated only the defendant, not Marszalkowski.[7] The court denied the defendant's motion and ruled that F's testimony was admissible. Marszalkowski then sought to sever his trial from the defendant's trial. The court granted Marszalkowski's motion, and the defendant sought a mistrial on the ground that the selected jurors already knew of Marszalkowski's existence. The court denied the motion for a mistrial.[8]

---

[6] F was not one of the victims in the charged crimes.

[7] F testified that on the various occasions when he was assaulted by the defendant, Marszalkowski was asleep.

[8] We note that the defendant should have designated his motion as a motion to dismiss the jury rather than as a motion for a mistrial because the jury had not been sworn. See *State* v. *Safford*, 21 Conn. App. 467, 471, 574 A.2d 1305, cert. denied, 216 Conn. 803, 577 A.2d 717 (1990). "A motion for a mistrial is treated as a motion to dismiss the jury"; *State* v. *Aponte*, 50 Conn. App. 114, 130, 718 A.2d 36, rev'd in part on other grounds, 249 Conn. 735, 738 A.2d 117 (1999); and both share the same standard of review. *State* v. *Safford*, supra, 471. We are not bound to treat the motion as labeled. See *Drahan* v. *Board of Education*, 42 Conn. App. 480, 489, 680 A.2d 316, cert. denied, 239 Conn. 921, 682 A.2d 1000 (1996). At trial and on appeal,

"In our review of the denial of a motion for mistrial, we have recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Anderson*, 255 Conn. 425, 435, 773 A.2d 287 (2001), quoting *State* v. *Newsome*, 238 Conn. 588, 628–29, 682 A.2d 972 (1996).

"While the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome." (Citation omitted; internal quotation marks omitted.) *State* v. *Taft*, 258 Conn. 412, 418, 781 A.2d 302 (2001).

The defendant specifically argues that a mistrial was warranted because the jurors' knowledge of Marszalkowski would prejudice them against the defendant, as they had been exposed to "the knowledge that the victims [had] made accusations against two individuals . . . ."[9] The defendant fails to explain why the existence

however, both parties addressed the motion as a motion for a mistrial, and the trial court ruled on it as such. Thus, we address it in those terms to avoid confusion.

[9] The defendant also argues that Marszalkowski's use of a peremptory challenge to strike a juror whom the defendant wanted to remain on the jury violated the defendant's right to a jury of his peers. The defendant cites no authority for that proposition. Parties have the right to reject jurors through peremptory challenges, not to select them; *State* v. *Vitale*, 190 Conn. 219, 225, 460 A.2d 961 (1983); and the purpose of voir dire is to secure a

of more than one accused would result in prejudice. Moreover, that argument is untenable because juries are routinely exposed to the knowledge that a victim made an accusation against more than one individual in any joint trial. Under the logic of the defendant's argument, *any* joint trial would be overly prejudicial and warrant a mistrial. That would eliminate joint trials. We are not persuaded that the fact that the victims accused more than one person warrants a mistrial under those circumstances.

Furthermore, the defendant failed to demonstrate that he actually was prejudiced. Defense counsel stated at oral argument that he could "not tell how [that knowledge] affected the jury." That statement highlights the lack of prejudice; there is nothing in the record to suggest that the five jurors' knowledge of Marszalkowski affected the proceedings or prevented the defendant from receiving a fair trial. The court acted well within its discretion when it denied the defendant's motion for a mistrial after the severance of Marszalkowski's trial.

## II

The defendant's second claim is that the court improperly admitted evidence of the defendant's uncharged misconduct. The defendant specifically argues that the evidence of uncharged misconduct did not fit within any exception to the general prohibition against evidence of uncharged misconduct.

The following additional facts are necessary for the resolution of the defendant's claim. Prior to trial, the defendant filed a motion in limine to preclude any evidence of his prior uncharged misconduct against F. In response, the state proffered the testimony of F. F

fair and unprejudiced jury; *State* v. *Johnson*, 44 Conn. App. 125, 142, 688 A.2d 867 (1997); not a jury of the defendant's personal liking. The defendant cannot show that Marszalkowski's use of the peremptory challenge deprived the defendant of a fair and impartial jury.

testified as to the following facts: In 1999, F was fifteen years old and had learning disabilities that required him to attend special classes. The defendant met F while F was fishing. The defendant talked to F about fishing, formed a relationship with F and invited F to the defendant's apartment on several occasions. During those visits, the defendant performed oral and anal sex on F.

The state argued that this evidence was admissible under the common scheme or plan exception to the prohibition against evidence of uncharged misconduct. The court determined that the assaults on F were sufficiently similar to the assaults on the victims and that the evidence was more probative than it was prejudicial. The court denied the defendant's motion in limine and admitted the uncharged misconduct evidence. At trial, F testified about substantially the same facts. The court issued limiting instructions to the jury before the evidence was admitted and in its closing instructions to the jury.[10]

"The standard of review is clear. The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in

[10] Immediately before F testified, the court instructed the jury as follows: "The testimony of this witness is being offered for a limited purpose. The evidence that you're going to hear is offered on the issue of whether the defendant was engaged in some kind of common scheme or plan to sexually abuse adolescent males.

"It's not admitted for any other purpose and should not be considered by you for any other purpose. In particular, it is not admitted to prove the bad character of the defendant or his tendency to commit criminal acts. You may not consider this evidence as establishing a predisposition on the part of the defendant to commit any of the crimes charged or to demonstrate any kind of criminal propensity.

"In addition, this evidence, like all evidence, is subject to review by you. The weight that you give to it is for you to decide. If you do not find that this evidence is sufficient to prove a common scheme or plan, you must exclude the evidence from your minds and it is to have no influence on your decision."

favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Johnson*, 65 Conn. App. 470, 475–76, 783 A.2d 1057, cert. denied, 258 Conn. 930, 783 A.2d 1031 (2001).

"As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . On the other hand, evidence of crimes so connected with the principal crime by circumstance, motive, design, or innate peculiarity, that the commission of the collateral crime tends directly to prove the commission of the principal crime, is admissible. . . . We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. . . . Second, the probative value of the evidence must outweigh its prejudicial effect." (Internal quotation marks omitted.) *State* v. *Lepri*, 56 Conn. App. 403, 407–408, 743 A.2d 626, cert. denied, 253 Conn. 902, 753 A.2d 938 (2000).

One exception to the general rule barring evidence of uncharged misconduct is that such evidence is admissible if it is offered to prove a common plan or scheme. Conn. Code Evid. § 4-5 (b). To be admissible under the common scheme exception, "the marks which the uncharged and the charged offenses have in common must be such that it may be logically inferred that if the defendant is guilty of one he must be guilty of the other." *State* v. *Esposito*, 192 Conn. 166, 172, 471 A.2d 949 (1984). "To guide that analysis, [our Supreme Court has] held that [e]vidence of prior sex offenses committed with persons other than the prosecuting witness is admissible to show a common design or plan where

the prior offenses (1) are not too remote in time; (2) are similar to the offense charged; and (3) are committed upon persons similar to the prosecuting witness. . . . We are more liberal in admitting evidence of other criminal acts to show a common scheme or pattern in sex related crimes than other crimes." (Citation omitted; internal quotation marks omitted.) *State* v. *Kulmac*, 230 Conn. 43, 61–62, 644 A.2d 887 (1994).

In this case, the prior sexual assaults were not too remote in time from those with which the defendant was charged. The sexual assaults of F occurred nearly contemporaneously with the sexual assaults of the victims in this case. The defendant assaulted the victims in this case between December, 1999, and the summer of 2000. The defendant assaulted F sometime in 1999. The uncharged and charged misconduct therefore took place close enough in time.

The sexual assaults are practically identical in nature. The defendant performed oral sex and attempted anal sex on the victims in the present case and performed oral and anal sex on F. Further, the sexual assaults all took place at the defendant's apartment, where he was able to separate the victims and F from their respective caregivers. Most strikingly, the defendant used fishing to foster his relationship with the victims and with F.

The victims and F also were extremely similar. All were boys, age fifteen or younger. Further, F and two of the three victims had learning disabilities. Therefore, the assaults on F were sufficiently similar to the assaults in the present case to be admissible under the common plan or scheme exception to the general rule barring evidence of uncharged misconduct. See *State* v. *Lepri*, supra, 56 Conn. App. 410 (common plan evidence properly admitted when defendant committed all assaults within weeks of each other, took victims to his house,

was more interested in touching victims than being touched, and victims were all of similar age, race).

We also conclude that the uncharged misconduct evidence was more probative than it was prejudicial. As indicated, the similarity of the assaults on F to the conduct charged in the present case made the evidence highly probative. Any prejudice was reduced by the court's two limiting instructions to the jury. See *State v. Gibson*, 75 Conn. App. 103, 114, 815 A.2d 172 (noting that limiting instructions often reduce potential prejudice of uncharged misconduct), cert. granted on other grounds, 263 Conn. 906, 819 A.2d 840 (2003). Therefore, the court did not abuse its discretion by admitting the evidence of uncharged misconduct.

## III

The defendant's final claim is that the court improperly refused to allow him to present evidence of prior sexual assaults on the victims that were committed by another individual who had been convicted of those assaults.

Additional facts are necessary for the resolution of the defendant's claim. The defendant sought to introduce evidence of previous sexual assaults on the victims to show that they could have an alternate source of their knowledge and, thus, the ability to fabricate the allegations against him. The court essentially reserved ruling on the defendant's motion until the trial developed.[11]

Thereafter, the state presented expert evidence on the victims' behavior, and the defendant renewed his motion. The defendant initially sought to recall the victims to question them about the sexual assault. Shortly thereafter, however, defense counsel specifically sug-

[11] Although the court phrased its ruling as a denial in part, it is clear from the transcript that it actually reserved ruling on the motion.

gested a stipulation that would present the evidence but spare the victims from being recalled to testify.[12] The court granted the defendant's motion, but reserved the right to review how the evidence was presented. The court then suggested a joint stipulation, to which defense counsel replied, "Your Honor's points are well taken. *I don't want to call those boys back if I can avoid it.*" (Emphasis added.)

The evidence was admitted as a joint stipulation at the close of the defendant's case-in-chief. The stipulation consisted of the defendant's reading from the court transcript that outlined the prosecutor's factual basis for a guilty plea by another individual for having assaulted the victims. The stipulation specifically included that "the boys indicated inappropriate sexual behavior on the part of this accused with them, [which] include[s] the claim of fellatio and touching in the anal area. And when the police interviewed [the] accused . . . he admitted that, in fact, he had touched them inappropriately. And that on one occasion, he had placed a finger inside the anus of the nine year old victim."

---

[12] Defense counsel stated: "The evidence is necessary to the defendant's case. It is necessary to the defendant's case because, simply put, the argument is going to be that the boys lied about this. And they were able to lie about it because they knew what to say. Something like this similar—so dreadfully similar had happened before.

"And that the probative value of evidence outweighs its prejudicial effect. That's probably the toughest one, I think, in terms of all of us. We have the statute. We do want to protect the privacy of the boys. But the defendant also has a sixth amendment right to put on a defense. So, I think that in this case, the probative value clearly outweighs any prejudicial effect.

"In fact, if Your Honor sees fit to grant the motion, I am open to suggestions as to how painlessly to do it. Unfortunately, the transcripts of—and I have a transcript of the sentencing of the [individual] back in 1994, I believe it is. Because of our statutes, [the transcripts] never refer to the boys' names. And unless there is some stipulation that in fact, they were, or a stipulation that we can work out that would save the boys from returning to court to answer that question, I'm amenable to that."

The record belies the defendant's claim. The defendant suggested a stipulation. After the court ruled to allow the evidence and suggested a stipulation, the defendant indicated that he did not want to recall the victims to testify. The defendant did not indicate that a stipulation would be insufficient to present the evidence. Further, the stipulation presented the evidence that the defendant wanted the jury to hear. We are not persuaded that the defendant was precluded from presenting a defense.

The judgment is affirmed.

In this opinion the other judges concurred.