STATE OF CONNECTICUT *v.* WILLIAM TOCCO
(AC 30287)

Bishop, Harper and West, Js.

Argued October 23, 2009—officially released May 4, 2010

770

*Kevin Murray Smith*, with whom, on the brief, was *Norman A. Pattis*, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Warren C. Murray*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, William Tocco, appeals from the judgment of conviction, rendered following a court trial, of four counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and two counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1).[1] The defendant claims that the court improperly (1) accepted his waiver of his right to a jury trial, (2) admitted certain constancy of accusation testimony and (3) admitted certain evidence of uncharged misconduct by the defendant. We affirm the judgment of the trial court.

---

[1] The trial court imposed a total effective term of incarceration of twenty years, suspended after twelve years, followed by twenty years of probation. With regard to one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), the court granted the defendant's motion for a judgment of acquittal.

The state presented evidence that, in 1998, the male victim,[2] then aged eleven, joined a Connecticut fife and drum corps. At times relevant, the corps of which the victim was a member consisted of approximately fifteen to twenty members of various ages, from children to adults. During fall, winter and spring, members of the corps attended regularly scheduled practice sessions, typically held at a firehouse, to refine their music and marching skills. During the summer, the corps participated in gatherings of various fife and drum corps, known as musters. At musters, participating corps exhibited their music and marching skills for other corps. Musters typically began on Fridays and ended on Sundays, and it was common for corps members to camp in tents at these outdoor events.

The state presented evidence that, upon joining the corps, the victim met the defendant, an experienced corps member, who was approximately twenty-one years of age. The victim testified that the defendant befriended him, customarily provided him with transportation to and from corps events and, with the permission of the victim's mother, acted as his chaperone at several musters. The victim testified that he told the defendant that he loved him in late 1998. After this revelation, the victim testified, his relationship with the defendant became sexual in nature. According to the victim, between, approximately, 1999 and 2001, he and the defendant routinely engaged in sexual activities in the defendant's automobile, which was parked behind the firehouse, following corps practice sessions. Also, the victim testified that he and the defendant engaged in sexual activities in the defendant's tent at musters. The victim testified that he and the defendant kissed and that he touched the defendant's private parts. The

---

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

victim testified, further, that he performed fellatio on the defendant routinely and that, less routinely, the defendant performed fellatio on him. The victim estimated that, during their sexual relationship between 1999 and 2001, he and the defendant engaged in oral sex between 250 to 300 times and that he and the defendant engaged in anal sex seventy-five times.

Following a trial to the court, the court rendered an oral decision setting forth its findings of fact. The court found that the victim had testified credibly and that the state had satisfied its burden of proof as to counts two through seven of its information. In counts two and three, the state alleged that the defendant committed sexual assault in the first degree in that, between September, 1999, and December, 1999, he had the victim, who was under thirteen years of age, perform fellatio on him at the firehouse. In counts four and five, the state alleged that the defendant committed sexual assault in the first degree in that, between January, 2000, and September, 2000, he had the victim, who was under thirteen years of age, perform fellatio on him at the firehouse. In counts six and seven, the state alleged that the defendant committed sexual assault in the second degree in that, between October, 2000, and March, 2001, he had the victim, who was older than thirteen years of age but less than sixteen years of age, perform fellatio on him at the firehouse. The court found that the defendant, who testified at trial that he had not engaged in any sexual activity with the victim, had an ample opportunity to have committed the offenses as alleged and that he had not testified credibly. Additional facts will be set forth as necessary in the context of the claims raised on appeal.

I

First, the defendant claims that the court improperly accepted his waiver of his right to a jury trial. The

defendant argues that the court failed to conduct an inquiry adequate to determine whether his waiver was knowing, intelligent and voluntary. The defendant also argues that the court misstated relevant legal principles in addressing him concerning his waiver. We disagree.

The following additional facts underlie the defendant's claim. At the time of the defendant's arraignment on March 22, 2007, the defendant elected to exercise his right to a trial by jury. On May 15, 2008, the defendant appeared in court with counsel, at which time the following colloquy occurred:

"[Defense Counsel]: After conferencing with my client and discussing the matter with his family, at this time my client's authorized me to make an application to this court to elect to go forward with a judge trial only and waive the jury trial.

"The Court: All right. And I'm going to canvass your client with regard to that waiver—

[Defense Counsel]: I've informed him of that.

"The Court:—which is a permanent waiver. All right. . . .

"[The Defendant]: Yes, sir.

"The Court: How are you, sir?

"[The Defendant]: Good, sir.

"The Court: You've had some ongoing discussions, apparently, with [defense counsel] about your case. Correct?

"[The Defendant]: Yes, sir.

"The Court: And one of those discussions has been that you originally elected a jury trial. And you have now had these discussions with, I think, [defense counsel], other counsel, and such, and the conclusion that you've

all come to together is that you wish to withdraw your case from a jury trial and elect to have your case heard only in front of the court. In other words, a court trial.

"[The Defendant]: Yes, sir.

"The Court: All right. It'll be in front of myself. Now, that's what you want to do?

"[The Defendant]: Yes, sir.

"The Court: Are you sure?

"[The Defendant]: Yes.

"The Court: And I'll tell you why I ask that question. Because once you elect a court trial you can never change your mind again and say, you know what, I've rethought my position, I want to go back and have a jury trial. Once you tell the court, I want a court trial, the court asks you the relevant questions that I'm asking you right now, I accept your election to have a court trial rather than a jury trial, there's no turning back at that point. In other words, [defense counsel] can't call me up tomorrow and say, [the defendant] called me up, he rethought the position, we want to go forward with that jury trial. It's over at that point. It's a court trial and a court trial only. This is something that you cannot change your mind once it has been made. Do you understand that?

"[The Defendant]: Yes, sir.

"The Court: I know you heard that from your lawyers before you heard it from me, but now that you've heard it from me, have you had enough time to discuss that issue with your lawyers?

"[The Defendant]: Yes.

"The Court: Are you satisfied with the advice that they've given you with regard to this waiver of a jury trial and a court trial?

"[The Defendant]: Yes, sir.

"The Court: And are you under the influence of any alcohol, drugs or medications at all today that might impair your judgment to make that decision?

"[The Defendant]: No, sir.

"The Court: All right. And you're sure this is what you want to do?

"[The Defendant]: Yes, sir.

"The Court: And I've indicated to both sides that if I accept your election to a court trial, that we will begin hearing evidence on this case at 10 o'clock on May 29. Is that the agreed upon time, gentlemen?"

Defense counsel represented that he was prepared for the court to commence the trial on May 29, 2008, or sooner. After discussing the trial schedule with defense counsel, the court stated, "Let's finish the canvass, and then we'll get to the dates." The following colloquy then occurred:

"The Court: All right. So . . .

"[The Defendant]: Yes, sir.

"The Court: Do you want me to accept your election to the court?

"[The Defendant]: Yes I do, sir.

"The Court: And you have no additional questions about it? You are positive?

"[The Defendant]: Yes.

"The Court: Okay. Excellent. Your election to waive a jury trial and accept a court trial is granted."

The presentation of evidence in the defendant's trial commenced on May 29, 2008. Prior to the presentation of evidence, the court stated to defense counsel: "And

obviously [the defendant] has elected a court trial, and that election continues." Defense counsel replied, "That is correct, Your Honor." At no time following the defendant's canvass did the defendant, either personally or through his attorney, attempt to revisit the waiver of his right to a trial by jury or request that the defendant proceed to trial before a jury.

The defendant raises the present claim for the first time on appeal and has affirmatively requested review under the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The defendant's claim is reviewable insofar as the record sets forth the court's canvass, the defendant's responses to the court's canvass and the court's acceptance of the defendant's waiver of his right to a trial by jury. Additionally, the claim is constitutional in nature because the defendant asserts that the court, by accepting his waiver, violated his fundamental right to a jury trial, afforded him by the state and federal constitutions.[3] See *State* v. *Ouellette*, 271 Conn. 740, 748 n.14, 859 A.2d 907 (2004) (affording *Golding* review to unpreserved claim that trial court improperly failed to ascertain waiver of right to jury trial knowing, intelligent and voluntary); *State* v. *Mauro*, 111 Conn. App. 368, 372, 958 A.2d 1262 (2008) (same). Our focus, therefore, turns to the third prong of *Golding*, under which the defendant bears the burden of demonstrating that "the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . ." *State* v. *Golding*, supra, 240.

[3] Apart from asserting that the court violated the defendant's state and federal constitutional rights, the defendant has not provided this court with a separate analysis of his rights under the Connecticut constitution or asserted that the Connecticut constitution affords him greater protections, for purposes of his claim, than its federal counterpart. Accordingly, "for purposes of this appeal we treat the jury trial rights arising from the state and federal constitutions as coextensive." *State* v. *Gore*, 288 Conn. 770, 776 n.7, 955 A.2d 1 (2008).

First, we set forth some relevant legal principles and our standard of review. "The right to a jury trial in a criminal case is among those constitutional rights which are related to the procedure for the determination of guilt or innocence. The standard for an effective waiver of such a right is that it must be knowing and intelligent, as well as voluntary. . . . Relying on the standard articulated in *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), we have adopted the definition of a valid waiver of a constitutional right as the intentional relinquishment or abandonment of a known right. . . . This strict standard precludes a court from presuming a waiver of the right to a trial by jury from a silent record. . . . In determining whether this strict standard has been met, a court must inquire into the totality of the circumstances of each case. . . . When such a claim is first raised on appeal, our focus is on compliance with these constitutional requirements rather than on observance of analogous procedural rules prescribed by statute or by the Practice Book. . . . Our task, therefore, is to determine whether the totality of the record furnishes sufficient assurance of a constitutionally valid waiver of the right to a jury trial. . . . Our inquiry is dependent upon the particular facts and circumstances surrounding [each] case, including the background, experience, and conduct of the accused. . . . In examining the record, moreover, we will indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . [will] not presume acquiescence in the loss of fundamental rights. . . . In addition, a waiver of a fundamental constitutional right is not to be presumed from a silent record." (Citations omitted; internal quotation marks omitted.) *State* v. *Gore*, 288 Conn. 770, 775–77, 955 A.2d 1 (2008).

In *Gore*, our Supreme Court addressed the requirements for a knowing, intelligent and voluntary waiver

of the right to a trial by jury.[4] The court held that in determining whether a court has properly accepted a waiver of the right, "there must be some affirmative indication from the accused personally, on the record, that he or she has decided to waive the fundamental right to a jury trial because the defendant's silence is too ambiguous to permit the inference that he or she has waived such a fundamental right. . . . A defendant's personal assertion of a waiver of the right to a jury trial is not conclusive evidence that the waiver was made knowingly, intelligently and voluntarily, but its absence is a fatal blow to the validity of a waiver." (Citations omitted.) Id., 781–82.

In the present case, it is undisputed that such condition precedent, in terms of a constitutionally valid

[4] The specific issue resolved in *Gore* was "whether defense counsel validly waived a jury trial on behalf of the defendant . . . when there [was] no evidence that the defendant also personally waived the right on the record." *State* v. *Gore*, supra, 288 Conn. 772. The Supreme Court in *Gore*, determining what a constitutionally valid waiver of the right to a jury trial must entail, held that the constitution, at a minimum, required that the defendant personally indicate that he wanted to waive his right to a trial by jury and that such affirmative indication appear on the record. Id., 777–78. Exercising its supervisory authority, the court required, in all future cases, that "in the absence of a written waiver, the trial court must canvass the defendant briefly to ensure that his or her personal waiver of a jury trial is made knowingly, intelligently and voluntarily." Id., 786–87.

The court explained: "Accordingly, in the future, when a defendant, personally or through counsel, indicates that he wishes to waive a jury trial in favor of a court trial in the absence of a signed written waiver by the defendant, the trial court should engage in a brief canvass of the defendant in order to ascertain that his or her personal waiver of the fundamental right to a jury trial is made knowingly, intelligently and voluntarily. This canvass need not be overly detailed or extensive, but it should be sufficient to allow the trial court to obtain assurance that the defendant: (1) understands that he or she personally has the right to a jury trial; (2) understands that he or she possesses the authority to give up or waive the right to a jury trial; and (3) voluntarily has chosen to waive the right to a jury trial and to elect a court trial." Id., 787–89. The court ruled that its holding applied prospectively. Id., 786–87. Although the procedural safeguards afforded by the court in *Gore*, which was officially released on September 23, 2008, did not apply to the present case, in which the court imposed sentence on

waiver, was satisfied in that the defendant addressed the court personally and stated on the record that he wanted to proceed to trial before the court, not a jury. This being the case, we must examine the totality of the circumstances, which include the statements made by the defendant to the court, to determine if the defendant's waiver was knowingly, intelligently and voluntarily made and, thus, was properly accepted by the court.

"In addition to determining that a defendant who seeks to [waive a constitutional right] is competent, a trial court must satisfy itself that the waiver . . . is knowing and voluntary. . . . [I]n this sense, there is a heightened standard for [the waiver of a constitutional right], but it is not a heightened standard of competence. . . . Moreover, it is the same standard that is applicable to all criminal defendants who have been found competent to stand trial. Under this standard, [t]he determination of whether there has been an intelligent waiver of [a constitutional right] must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." (Citations omitted; internal quotation marks omitted.) *State* v. *Ouellette,* supra, 271 Conn. 753–54.

Our review of the totality of the circumstances as they appear in the record reveals that the issue of the defendant's competency was not raised in any manner. Likewise, it is not raised as an issue in this appeal. The record reflects that the defendant was represented by counsel, Pat Bonanno, during the entirety of his trial. The record of the trial does not portray that the defendant did not communicate effectively with his attorney during the trial. To the contrary, during the court's canvass, the defendant represented to the court that

August 15, 2008, that decision nonetheless is instructive as we analyze the issue before us.

he had discussed his decision to waive his right to a jury trial with his attorney and that he was satisfied with the advice afforded him with regard to that issue. The fact that the defendant was represented by counsel and that he conferred with counsel concerning the right to waive his right to a jury trial supports a conclusion that his waiver was constitutionally sound. See, e.g., *State* v. *Smith*, 100 Conn. App. 313, 324, 917 A.2d 1017, cert. denied, 282 Conn. 920, 925 A.2d 1102 (2007).

In considering the background, conduct and experience of the defendant, we look to the record of the trial and, in particular, the court's canvass of the defendant concerning his waiver. The record reflects that the defendant responded to the court's inquiries in an intelligent and courteous manner. During the court's colloquy with the defendant, the defendant represented that he was not under the influence of alcohol, drugs or medications, that he carefully had considered the issue and that he was certain of his decision. During his trial testimony, the defendant testified as to his background and life experience. The defendant testified that he had attended college and a police academy. The defendant testified, as well, that he had been gainfully employed as a teacher's assistant and a New York City police officer. The defendant's level of education, and particularly his experience in law enforcement, strongly supports a determination that the defendant would have had a basic understanding of the criminal justice system, including the fact that he had a right to proceed to trial before a jury.

Finally, we look to the court's statements to the defendant during the canvass. The court unambiguously stated to the defendant that the purpose of his attorney's motion was to remove the defendant's case from the jury trial list so that it may be heard by the court. The court stated to the defendant that his decision to waive

his right to a jury trial was a permanent one, and questioned the defendant as to whether he had consulted with his attorney with regard to the decision and whether he was "positive" that he wanted to proceed without a jury present. The court's statements to the defendant left no doubt as to the subject of the waiver and the implications of the waiver. The defendant's immediate and unequivocal replies to the court's inquiries reflected his strong desire to proceed to trial before the court, not a jury.

On the basis of the totality of the circumstances, we conclude that the record establishes that the defendant knowingly, intelligently and voluntarily waived his right to a jury trial. As noted previously; see footnote 4 of this opinion; the procedural rule announced in *Gore* did not apply to the defendant's trial; the trial court was under no affirmative obligation to canvass the defendant concerning his waiver. The court, however, did conduct a canvass of the defendant that afforded it a basis on which to determine whether the defendant understood his right to proceed to trial before a jury, understood that he had the option of waiving that right and voluntarily had chosen to forgo that right in favor of a court trial. Thereafter, the court granted the defendant's request.[5] We reject the defendant's argument that

[5] Prior to accepting the defendant's waiver, the court did not explicitly state for the record any factual findings it had made with regard to whether the defendant's waiver was intelligent, knowing or voluntary. The defendant suggests that such omission supports his contention that the court's acceptance of his request was in error. As a preliminary matter, the defendant does not cite to any authority supporting his assertion that the court was required to explain its ruling by means of particular words or phrases. Rather, the law requires that the court ascertain the nature of the waiver prior to accepting or rejecting it.

This court does not presume error on the part of the trial court; error must be demonstrated by an appellant on the basis of an adequate record. It is the defendant's burden to demonstrate that the court erroneously accepted the waiver and to provide this court with a record supporting his claim. The defendant did not request an articulation related to the court's ruling, and we decline his invitation to infer that the court's failure to explain its ruling supports his claim that the ruling in any way was improper.

the court did not conduct an appropriate inquiry prior to accepting the defendant's waiver.

Apart from arguing that the court's canvass was not sufficiently probative, the defendant also argues that the court improperly accepted his waiver after having misstated important legal principles related to the right to a jury trial. Specifically, the defendant observes that the court repeatedly emphasized that, once the court accepted his waiver, he could not thereafter change his mind and elect to proceed to a trial before a jury. The defendant argues that the statements of this nature were legally improper in that they contradict General Statutes § 54-82b (b)[6] and Practice Book § 42-1.[7]

The defendant does not demonstrate how this aspect of his claim is related to the validity of his waiver because he has not meaningfully demonstrated that the court's statements misled him as to his right to a jury trial, his authority to waive his right to a jury trial and his decision to forgo that right. Any such issues would be relevant to a constitutional analysis of the waiver that was made and accepted by the court. Instead, the defendant argues that the court's statements misled him as to *his right to challenge the validity of his waiver at some later time.* Yet, the record does not reflect

[6] General Statutes § 54-82b (b) provides: "In criminal proceedings the judge shall advise the accused of his right to trial by jury at the time he is put to plea and, if the accused does not then claim a jury, his right thereto shall be deemed waived, but if a judge acting on motion made by the accused within ten days after judgment finds that such waiver was made when the accused was not fully cognizant of his rights or when, in the opinion of the judge, the proper administration of justice requires it, the judge shall vacate the judgment and cause the proceeding to be set for jury trial."

[7] Practice Book § 42-1 provides: "The defendant in a criminal action may demand a trial by jury of issues which are triable of right by jury. If at the time the defendant is put to plea, he or she elects a trial by the court, the judicial authority shall advise the defendant of his or her right to a trial by jury and that a failure to elect a jury trial at that time may constitute a waiver of that right. If the defendant does not then elect a jury trial, the defendant's right thereto may be deemed to have been waived."

that the defendant, in fact, attempted to challenge the validity of his waiver at any time prior to filing this appeal. The defendant asserts that the court's statements concerning the finality of his waiver "likely led to further, unintentional waivers." The defendant explains: "For example, in reliance upon the court's insistence that the waiver was absolutely final, the defendant logically would have refrained from any further investigation into the right and the statutory vehicles available to him to remedy the waiver." We reject the defendant's assertions that the court's statements affected the validity of his waiver.

We agree with the defendant that § 54-82b (b) afforded him a statutory right to challenge the validity of his waiver on the ground that he was "not fully cognizant of his rights" or that "the proper administration of justice require[d]" that the judgment obtained be set aside and the case be set for a jury trial. General Statutes § 54-82b (b). We disagree, however, with the defendant's interpretation of the court's statements. In discussing the finality of the defendant's decision to waive his right to a jury trial, the court repeatedly emphasized that the defendant could not change his mind *simply because he had rethought his position.* A reasonable interpretation of the court's statements is that the court conveyed to the defendant that the election to proceed before the court, insofar as it was a tactical decision that the defendant had carefully considered, was final; the court made clear that it would not permit the defendant to change his election due to a change in defense strategy once the court had accepted the waiver. The court did not state that the matter could not be revisited at a later time if the defendant did not understand his right to a jury trial, did not understand that he possessed the authority to waive his right or had waived his right involuntarily. For these reasons, the defendant has not demonstrated that the

court's statements contradicted § 54-82b (b) or were legally inaccurate. Apart from concluding that the statements were not legally inaccurate, we also are not persuaded that the court's statements call into doubt the nature of and, thus, the constitutionality of, the defendant's waiver.

To the extent that the defendant argues that the court's comments concerning the finality of his decision contradicted Practice Book § 42-1, the defendant stands on even weaker footing. The record reflects that, at the time the defendant was put to plea, he elected a trial by a jury. This is not a case, therefore, in which a defendant attempted to elect a jury trial after having elected a trial by the court. Thus, we disagree that the court's comments to the defendant violated the letter or spirit of Practice Book § 42-1 or, more importantly, that they cast doubt on whether the defendant understood that he had a right to a trial by jury, whether the defendant understood that it was his option to waive his right to a trial by jury or whether the defendant's election to forgo that right was voluntary.

For the foregoing reasons, we reject the arguments raised by the defendant in connection with this claim. The defendant has not demonstrated that a constitutional violation clearly exists and clearly deprived him of a fair trial; the claim fails under *Golding*'s third prong.

II

Next, the defendant claims that the court improperly admitted certain constancy of accusation testimony. We decline to review this unpreserved evidentiary claim.

In his principal brief, the defendant states that the court improperly "admitted constancy of accusation testimony of the details of the victim's numerous, post-official complaint disclosures, from five different witnesses, resulting in harmful error that substantially

affected the verdict." The defendant raises several arguments in support of his challenge to the admission of this testimony. As a preliminary matter, the defendant invites this court to "reexamine" the constancy of accusation doctrine and to either curtail or abandon it. Next, the defendant argues that the court failed to undertake an analysis on the record as to whether the prejudicial nature of this testimony outweighed its probative value. Additionally, the defendant argues that the court improperly admitted the testimony under the constancy of accusation doctrine because the alleged victim in this case was a male, the testimony went beyond the types of corroborative facts permitted under the constancy of accusation doctrine and the testimony related to complaints made by the victim *after* he had reported the sexual abuse to an employee of the department of children and families while he was undergoing impatient psychiatric treatment in 2005.

The defendant acknowledges that he did not raise any aspect of this claim before the trial court and, thus, did not preserve the claim for appellate review. He affirmatively requests review of his claim under the *Golding* doctrine or, in the alternative, asks us to review the claim for plain error. See Practice Book § 60-5.

The defendant has not adequately briefed his claim. Our rules of practice require an appellant to set forth the specific facts of the case that bear on any issue raised in the appeal. See generally Practice Book § 67-4 (c) and (d). Neither the fact section of the defendant's principal brief nor the portion of his brief related to this claim identifies with any degree of specificity the evidence that is at issue.[8] The defendant refers generally

---

[8] In the fact section of his brief, the defendant refers in general terms to testimony presented on June 3, 2008. The defendant states that "the majority of [this testimony] was presumably allowed in under the guise of constancy of accusation evidence." The record reflects that the state presented testimony from four witnesses on that date, and the transcript of the court proceeding on that date, which primarily consists of the examination of these witnesses, is 104 pages in length. Even a cursory examination of the

to the testimony of "five different witnesses," but does not identify these witnesses or, more importantly, the specific portions of their testimony that he challenges for the first time on appeal. The defendant's analysis of this claim is not tethered to any specific facts or evidence, rather, it consists of criticisms of the constancy of accusation doctrine and reasons why it should not have had any application in this case. It is not apparent from our review of the record that the state called any witness as a constancy of accusation witness or that the court expressly admitted any evidence in reliance on the constancy of accusation doctrine. Furthermore, this court is not an advocate for any party; it would be beyond the proper role of this court in

testimony of these witnesses casts doubt on the defendant's unsupported assertion that these were constancy of accusation witnesses in that their testimony was not presented in accordance with the carefully drawn parameters set forth in *State* v. *Troupe*, 237 Conn. 284, 304–305, 677 A.2d 917 (1996) (en banc). By way of example, two of the witnesses who testified on that date did not testify that they had spoken directly with the victim.

In the portion of his brief related to this claim, the defendant refers to Rachel Halas and Ralph DeLuca, detectives with the Danbury and Bethel police departments, respectively, who testified on June 3, 2008, that they had investigated the victim's complaints of sexual abuse. Although these witnesses testified that they had spoken with the victim concerning his complaints and that the victim had related information to them concerning his complaints, it is not at all clear from the record that the court admitted the testimony of these witnesses under the constancy of accusation doctrine or that the testimony of these police detectives who had investigated the victim's complaint constituted constancy of accusation evidence.

"A constancy of accusation witness is someone to whom the complaining witness in a sexual assault case has confided in about her assault. . . . For evidence of a prior accusation to be admissible pursuant to the constancy of accusation doctrine, the accusation must have been made before the victim reported the incident to the police. Once the victim has reported the crime to the police, statements to witnesses by the victim no longer serve the purpose for which constancy of accusation testimony is permitted. . . . Further, the constancy of accusation doctrine is limited to testimony only as to the fact and timing of the victim's complaint and as to details of the assault necessary to associate the complaint with the pending charge." (Citations omitted; internal quotation marks omitted.) *State* v. *Antonio W.*, 109 Conn. App. 43, 51, 950 A.2d 580, cert. denied, 289 Conn. 923, 958 A.2d 153 (2008).

resolving the issues raised on appeal to sift through the voluminous record before us and speculate as to the specific evidence at issue in the present claim. See, e.g., *Roberto* v. *Honeywell, Inc.*, 43 Conn. App. 161, 163, 681 A.2d 1011, cert. denied, 239 Conn. 941, 684 A.2d 712 (1996), and cases cited therein.[9]

### III

Finally, the defendant claims that the court improperly permitted the state to present testimony from a witness, M, under the common scheme exception to the general prohibition of prior misconduct evidence. We disagree.

The following procedural facts underlie the defendant's claim. Prior to the start of the trial, which occurred before the court, *Iannotti, J.*, the court, *Reynolds, J.*, conducted a hearing related to the admissibility of certain uncharged misconduct evidence that the state intended to elicit from M at trial. Essentially, the defendant sought notice of the evidence at issue and asked the court to preclude the evidence. With the consent of the parties, the court treated the matter as a motion to preclude the evidence and conducted a hearing related to the motion during which it heard testimony from the victim and M.

During the hearing, M testified that he is Caucasian and of both Italian and Irish ancestry, and that he met the defendant in 1997, when he was twelve years old and the defendant was twenty-two years old. M testified that, like the defendant, he was a musician in the fife

---

[9] Although the inadequacies of the defendant's brief preclude review of his claim, we note that, even if, as the defendant suggests, the court improperly permitted the state to present constancy of accusation testimony, we readily would reject the defendant's request to review this claim under the *Golding* doctrine. Our Supreme Court has held that claims related solely to the admission of evidence under the constancy of accusation doctrine are not constitutional in nature. See *State* v. *Samuels*, 273 Conn. 541, 558, 871 A.2d 1005 (2005); *State* v. *Troupe*, 237 Conn. 284, 305, 677 A.2d 917 (1996) (en banc).

and drum corps and that he got to know the defendant through corps activities. M testified that his relationship with the defendant began when the defendant permitted him to sleep in his tent at a muster in 1997 and that he awoke the next morning to find that he was in the defendant's arms. After this point, in 1997, for approximately one year, until sometime in 1999, M and the defendant developed a close relationship. The defendant paid attention to M, and frequently provided M with transportation to and from corps activities. The defendant also spent time with M and his family at M's home and frequently stayed at M's home over weekends. M testified that the relationship soon became sexual in nature in that, on many occasions, he and the defendant engaged in sexual activities in the defendant's tent at musters and at M's home during weekend visits by the defendant, when his parents were asleep. At musters, the defendant acted in a guardian role. M testified that the sexual acts consisted of him performing fellatio on the defendant and the defendant performing fellatio on him. Also, M testified that he and the defendant had engaged in anal sex.

M testified that, during the relationship, the defendant gave him gifts, including a video game, alcoholic beverages and cigarettes. M testified that, during the relationship, the defendant cautioned him not to tell anyone about their sexual activities because doing so could cause trouble for the defendant.

At the hearing, the state presented the victim's testimony concerning his relationship with the defendant. The victim testified that he is Caucasian and of Irish descent and that he met the defendant in 1998, when he was eleven years old and the defendant was twenty-two years old. The victim testified that, like the defendant, he was a musician in the fife and drum corps and got to know the defendant through their corps activities. The victim testified that he and the defendant were

in a relationship between 1999 and sometime in 2001. During this relationship, the defendant befriended the victim and frequently provided the victim with transportation to and from corps activities, including musters. During this relationship, the victim often slept in the defendant's tent at musters, where the defendant acted as a guardian for the victim. The victim testified that his relationship with the defendant became sexual, escalating from touching and kissing to many instances of oral and anal sex. The victim testified that sexual activities occurred in the defendant's tent at musters, that he performed fellatio on the defendant and that the defendant performed fellatio on him.

The victim testified that, during the relationship, the defendant gave him gifts including alcoholic beverages, marijuana, clothing, compact discs and food. The victim testified that, during the relationship, the defendant instructed him not to tell anyone about the sexual activities taking place and that, if they were to "go somewhere," the victim was to tell others that he was sixteen years of age.

Following the evidentiary phase of the hearing, the prosecutor argued that M's testimony was admissible under the common scheme exception to the prohibition on the admission of uncharged misconduct evidence. The defendant's attorney objected to the admission of the evidence on the ground that it did not meet the test for admissibility under the common scheme exception and on the ground that the evidence was more prejudicial than probative.

Following the hearing, by way of an oral ruling, the court, *Reynolds, J.,* denied the defendant's motion to preclude the evidence. The court reviewed the testimony elicited at the hearing and, after discussing the relevant legal principles, determined that the testimony of M, related to prior sexual offenses, was admissible

under the common scheme exception. The court stated that the events described by M were "not remote in time at all" from those described by the victim, that the offenses described by the witnesses were "exactly similar" in nature and that the two witnesses were "almost identically situated" in that they were both Caucasian, of a similar age, musicians in the fife and drum corps with the defendant and participants in weekend musters with the defendant. After determining that the proffered evidence met the test for admissibility under the common scheme exception, the court considered whether the evidence was more prejudicial than probative. In this regard, the court stated: "[M's] testimony is highly probative of a common plan or scheme of sexual misconduct. It couldn't be any more on point. As to its prejudicial effect, what greatly influenced my decision [to admit the evidence] is the fact that this is to be a court trial, not a trial by jury. . . . [I]n this case, there is no concern about confusion [as to the proper use of this evidence] on the part of the jurors because there are no jurors. Judge Iannotti is a very experienced criminal judge. He's more than capable of . . . considering said evidence for its proper purpose." At trial, before Judge Iannotti, the state introduced M's testimony over the defendant's objection.

"Unless an evidentiary ruling involves a clear misconception of the law, [t]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Smith*, 275 Conn. 205, 219, 881 A.2d 160 (2005).

"[P]rior misconduct evidence may be admissible to prove intent, identity, motive, malice or a common plan or scheme. Conn. Code Evid. § 4-5 (b). Thus, the fact [t]hat evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material . . . .

"In order to determine whether such evidence is admissible, we use a two part test. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions [set forth in Conn. Code Evid. § 4-5 (b)]. Second, the probative value of [the prior misconduct] evidence must outweigh [its] prejudicial effect . . . .

"The first prong of the test requires the trial court to determine if an exception applies to the evidence sought to be admitted. . . . When evidence of prior [uncharged] misconduct is offered to show a common plan or [scheme], the marks which the . . . [charged and uncharged misconduct] have in common must be such that it may be logically inferred that if the defendant is guilty of one he must be guilty of the other. . . . [T]he inference need not depend [on] one or more unique features common [to both the charged and uncharged misconduct], for features of substantial but lesser distinctiveness, although insufficient to raise the inference if considered separately, may yield a distinctive combination if considered together. . . .

"To guide this analysis, we have held that [e]vidence of prior sex offenses committed with persons other than the prosecuting witness is admissible to show a common design or plan [when] the prior offenses (1) are not too remote in time; (2) are similar to the offense charged; and (3) are committed upon persons similar to the prosecuting witness. . . . Our inquiry should focus on each of the three factors because no single factor is likely to be determinative. . . . Furthermore,

[w]e are more liberal in admitting evidence of other criminal acts to show a common scheme or pattern in [trials of] sex related crimes than [in trials of] other crimes." (Citations omitted; internal quotation marks omitted.) *State* v. *Jacobson*, 283 Conn. 618, 630–31, 930 A.2d 628 (2007).[10]

The defendant argues that the uncharged prior offenses described by M did not meet the criteria for admissibility for several reasons. The defendant argues that the prior offenses were too remote in time because they occurred "more than a decade before" M testified at trial. The defendant's argument, however, is based on a misinterpretation of the law. As our decisional law amply reflects, the remoteness in time factor concerns the length of time, if any, between the charged and uncharged misconduct, not the length of time between the uncharged misconduct and the date of the trial. See, e.g., *State* v. *Jacobson*, supra, 283 Conn. 632–33 (analyzing length of time between charged and uncharged misconduct); *State* v. *Ellis*, 270 Conn. 337, 358–59, 852 A.2d 676 (2004) (same); *State* v. *Aggen*, 79 Conn. App. 263, 272, 829 A.2d 919 (2003) (same). Here, we readily conclude that the charged and uncharged offenses occurred within the same time period, thereby raising the probative value of the uncharged offenses. With regard to the second factor, the defendant argues that the prior offenses were dissimilar to the charged offenses because, in contrast to the victim's allegations, M testified that the defendant sexually abused him at M's home while his family members were asleep and

---

[10] Although the court in the present case admitted the evidence of prior uncharged sexual misconduct under the common scheme exception, we note that, in *State* v. *DeJesus*, 288 Conn. 418, 470, 953 A.2d 45 (2008), a decision officially released after the court rendered its judgment in the present case, our Supreme Court recognized "a *limited* exception to the prohibition on the admission of uncharged misconduct evidence in *sex crime* cases to prove that the defendant had a propensity to engage in aberrant and compulsive criminal sexual behavior." (Emphasis in original.)

that sexual contacts took place during approximately one year. That there were some differences in the charged offenses is not dispositive. Here, M and the victim testified to strikingly similar accounts of sexual abuse at the hands of the defendant. Both witnesses testified that the defendant befriended them when they were members of the fife and drum corps, provided them with transportation to corps activities, provided them with various gifts, permitted them to sleep in his tent at musters, engaged in both oral and anal sex with them, engaged in sexual activities with them in his tent at musters and instructed them to conceal their sexual activities with him. We conclude that the many material similarities between the charged and uncharged offenses greatly outweigh the ways in which the offenses are dissimilar. For the foregoing reasons, we conclude that the court properly considered the relevant criteria and determined that the uncharged offenses were relevant as common scheme evidence.[11]

Next, the defendant argues that the court improperly failed to conclude that the evidence was more prejudicial than probative. First, the defendant argues that the evidence did not have any probative value because of "the remoteness of the uncharged misconduct evidence" and "the lack of similarity between the uncharged misconduct and the crimes charged." For the reasons set forth earlier in our analysis of this evidence, these arguments are not persuasive. Second, the defendant argues that the evidence should have been precluded because the state did not present any physical

[11] Apparently, the defendant does not dispute that the state satisfied the third factor concerning the similarities shared by the alleged victims of the charged and uncharged offenses. Our independent review of this criteria reflects that M and the victim were Caucasian males with some degree of Irish ancestry, relatively close in age, members of the fife and drum corps and spent a significant amount of time under the defendant's watch at the time of the events in question. In light of this evidence, we conclude that the court properly determined that M and the victim were similar victims.

evidence or "independent witnesses to the alleged crimes" and the state's witnesses were inconsistent in several respects. Assuming that these are valid assertions, we fail to see how they affect the admissibility of the uncharged misconduct evidence. Such arguments properly are directed to the weight, if any, that the trier of fact should afford the evidence, not to the admissibility of the evidence. Finally, the defendant asserts that the evidence was inherently prejudicial. "Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the [trier of fact]." (Internal quotation marks omitted.) *State* v. *Smith*, supra, 275 Conn. 218. We recognize that the uncharged misconduct evidence concerned the defendant's sexual abuse of a preteen boy and that evidence of this nature has a tendency to arouse the emotions of the trier of fact. We, however, reject the defendant's argument that the evidence was *unduly* prejudicial for two reasons. First, for the reasons set forth previously, we conclude that the evidence had a very high probative value; it strongly suggested a common scheme of criminal activity by the defendant. Second, this case was tried before a judge, not a jury. This distinction "decreased the likelihood that the trier of fact would afford it undue weight." *State* v. *Boykin*, 83 Conn. App. 832, 837, 851 A.2d 384, cert. denied, 271 Conn. 911, 859 A.2d 570 (2004). For the foregoing reasons, we conclude that the court's admission of the evidence of uncharged misconduct did not reflect an abuse of its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.